## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | |
|---|---|
| TANIA SMITH-ALLEN ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.:  CV421-171 |
| ) | |
| ) | |
| CHATHAM ORTHOPAEDIC ) | |
| ASSOCIATES, P.A. and ) | |
| SHARON M. BROMLEY, ) | |
| ) | JURY TRIAL REQUESTED |
| Defendants. ) | |

## COMPLAINT

COMES NOW, Plaintiff Tania Smith-Allen ("Ms. Smith-Allen") by and through her counsel of record and files this Complaint against Chatham Orthopaedic Associates, P.A. ("Chatham Orthopaedic Associates") and its Chief Executive Officer, Sharon M. Bromley (CEO Bromley), and shows the Court as follows:

## INTRODUCTION

Ms. Smith-Allen is and remains an employee of Chatham Orthopaedic Associates, P.A., an orthopedic medical practice in Savannah, Georgia. Chatham Orthopaedic Associates has engaged in the remarkable, and probably unprecedented

conduct of threatening to arrest and ostensibly have prosecuted an employee for requesting an accommodation under the ADAAA.

In 2007, Ms. Smith-Allen was diagnosed with ovarian cancer. After a decade of remission, cancer returned and a number of treatments ensued, including surgery and chemotherapy. She began work for Chatham Orthopaedic Associates in December 2019 and informed the medical practice of her illness at that time. She was paid only an hourly rate without benefits. After another brief period of remission, cancer was discovered to have metastasized in March 2020, as the viral pandemic began. Ms. Smith-Allen has an unknown, but relatively short, period of time to live.

In July 2020, Ms. Smith-Allen began experiencing migraine headaches. Despite concerns being raised to Defendant CEO Bromley, she followed through with a plan to place Ms. Smith-Allen in an office adjacent to a loud, vibrating MRI machine. A letter from her neurologist requesting an accommodation was ignored.

Her immunocompromised medical condition during the circumstance of the viral pandemic caused her oncologist to write a letter on her behalf to Chatham Orthopaedic Associates. In his letter, the oncologist sought specific workplace accommodations to protect Ms. Smith-Allen from the virus and other transmissible diseases. Upon receipt of the letter, CEO Bromley initiated an effort to access Ms. Smith-Allen's medical records without notice to or permission from Ms. Smith-

Allen or her oncologist.  CEO Bromley telephoned an individual believed, but not known, to be employed by Ms. Smith-Allen's medical provider and offered Ms. Smith-Allen's name, social security number and date of birth.  Unable to access those records, CEO Bromley summoned Ms. Smith-Allen to a meeting and accused her of fraud, commission of a crime and threatened to forward the matter to "legal" and to the police.  As she threatened Ms. Smith-Allen, CEO Bromley loudly confronted her, "Do you hear me?!"  Soon thereafter, CEO Bromley moved forward with plans to move Ms. Smith-Allen's office location to a crowded, high-traffic office with recirculated air, directly contrary to her oncologist's recommended accommodation.

Plaintiff brings this action, in part, under the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. §12101, *et seq.* ("ADAAA") and under state law against her employer, Chatham Orthopaedic Associates and CEO Bromley, as set forth below.

## JURISDICTION AND VENUE

### 1.

The jurisdiction of the Court is conferred pursuant to 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1343(a)(3), (a)(4) (civil rights).  The Court has pendent jurisdiction of the state law claims stated herein under 28 U.S.C. § 1367.

2.

Venue is proper in this Court under 28 U.S.C. § 1391 because it is a district wherein Defendants reside or do business and where a substantial part of the events or omissions giving rise to Ms. Smith-Allen's claims occurred. Venue is further proper under 42 U.S.C. § 2000e-5(f)(3) because it is the district in which the unlawful employment practices were committed.

## PARTIES

3.

Plaintiff Smith-Allen is a citizen and resident of the United States, who resides in Savannah, Chatham County, Georgia. Ms. Smith-Allen has been employed by Defendant as a surgical pre-certification specialist since December 11, 2019 and remains employed at the time this Complaint is filed. Ms. Smith-Allen's employment responsibilities include scheduling surgery and performing other tasks related to insuring a transition for both the practice and the patient from diagnosis to surgery.

4.

Ms. Smith-Allen is and, at all relevant times was, an individual with a disability as that term is defined by 42 U.S.C. § 12102(1).

5.

Ms. Smith-Allen is a person with a disability because she has actual physical

impairments causing substantial limitations in one or more major life activities, because she has a record of impairment, and because Chatham Orthopaedic Associates regarded her as having an impairment.  42 U.S.C. § 12102(1).

6.

Ms. Smith-Allen was, and remains, capable of performing the essential functions of her job with or without reasonable accommodation.  See 42 U.S.C. § 12111(8).

7.

Defendant Chatham Orthopaedic Associates is an "employer" engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111(5).

8.

During all times of Ms. Smith's employment and in each of 20 or more calendar weeks in the current or preceding calendar, Chatham Orthopaedic Associates has employed over one hundred (100) persons for each working day in each of 20 or more calendar weeks in the current or preceding year.  42 U.S.C.A. §§ 12111(5)(a), 1981a(b)(3).

9.

Defendant Chatham Orthopaedic Associates can be served by delivering a copy of this Complaint to its registered agent James F. Holtzclaw, M.D., 4425 Paulsen Street, Savannah, Georgia 31405.

10.

Defendant Sharon M. Bromley (CEO Bromley) is an individual employed by Chatham Orthopaedic Associates as its Chief Executive Officer.

11.

CEO Bromley is a "person" as that term is defined in 42 U.S.C. § 12111(7) and 42 U.S.C. § 2000e.

12.

CEO Bromley can be served with the Summons and Complaint at her residence or place of employment in Savannah, Chatham County, Georgia.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.

Ms. Smith-Allen timely filed Charge of Discrimination No. 415-2021-00361 with the U.S. Equal Employment Opportunity Commission (EEOC) on December 15, 2020 and she received from the EEOC a notice of right to sue dated April 1, 2021. See attached Exhibits A and B, respectively. Ms. Smith-Allen timely files this action within ninety (90) days of her receipt of the notice of right to sue.

## FACTUAL BACKGROUND

14.

Ms. Smith-Allen has metastatic ovarian cancer and has been under the care of

physicians for ovarian cancer since approximately 2007.

15.

Ms. Smith-Allen was hired as a surgical pre-certification specialist with Chatham Orthopaedic Associates on December 11, 2019.

16.

Ms. Smith-Allen informed Chatham Orthopaedic Associates of her illness, cancer, during its consideration of her employment which consideration occurred at a time before common knowledge of the COVID-19 viral pandemic.

17.

From the time she was employed to the present, Defendants Chatham Orthopaedic Associates and Sharon Bromley had knowledge of her of her illness, cancer.

18.

Ms. Smith-Allen was undergoing chemotherapy treatment at the time she began work for Chatham Orthopaedic Associates. This treatment and its associated immunocompromising effects were, and remain, known to Defendants Chatham Orthopaedic Associates and Sharon Bromley.

19.

Ms. Smith-Allen halted chemotherapy treatment in March 2020, in part, because of the immunocompromised condition associated with chemotherapy in the

time of the viral pandemic.

20.

In approximately June 2020, Ms. Smith-Allen's migraine headaches became chronic and severe.

21.

On July 10, 2020, Ms. Smith-Allen discussed with CEO Bromley that she (Ms. Smith-Allen) was suffering from chronic, severe migraines and advanced-stage cancer.

22.

Approximately one week later, knowing Ms. Smith-Allen suffered from chronic migraine headaches, and knowing the deleterious effects of close proximity of a Magnetic Resonance Imaging (MRI) machine to persons suffering from migraine headaches, CEO Bromley moved forward with plans to place Ms. Smith-Allen in an office immediately adjacent to a loud, vibrating MRI machine.

23.

Other offices were available to avoid the harm caused Ms. Smith-Allen by placing her in close proximity to the MRI machine.

24.

On August 20, 2020, Ms. Smith-Allen presented to her supervisor a letter from

the neurologist treating her migraine headaches, Dr. Robert MacGregor, who

requested an accommodation on behalf of Ms. Smith-Allen.

25.

CEO Bromley never responded nor acted in response to the letter from Dr.

MacGregor.

26.

On October, 13, 2020, CEO Bromley, knowing still of Ms. Smith-Allen's

immunocompromised medical condition, informed Ms. Smith-Allen that she

would again be moved to another office.

27.

Specifically, CEO Bromley informed Ms. Smith-Allen that she and her

(singular) officemate would be moved from their existing office with less come-

and-go traffic to a new office with over ten (10) other staff members with more

come-and-go traffic.

28.

CEO Bromley was asked to reconsider her decision to move Ms. Smith-

Allen to this location because of her cancer and the pandemic, but CEO Bromley

did not reconsider.

29.

During the week of October 20, 2020, Ms. Smith-Allen's supervisor delivered

to CEO Bromley a letter from Ms. Smith-Allen's oncologist, Dr. Bert M. Petersen,

Jr., addressed to Chatham Orthopaedic Associates.

30.

The letter from Dr. Petersen described the need for an accommodation for Ms.

Smith-Allen, as follows:

> Please be advised that my patient, Tania Smith-Allen, has been under my care for 5 years. She suffers with a chronic medical condition which has left her immunocompromised.
>
> Given the current environment in which we live with the COVID-19 pandemic, it is imperative that Tania be able to work in an environment where social distancing is strictly enforced.
>
> Ideally, a private work space is optimal to keep her safe and reduce her risk of infection. You are likely aware of the increased risk in an office setting with recirculating air where people are sitting next to each other as well as walking around each other for extended periods/ hours each day.
>
> I am requesting that you make every attempt to create a work space and environment that allows her to function with a reduced risk of harm to her health and well-being.

See attached Exhibit "C".

31.

On October 26, 2020, CEO Bromley initiated an effort to access Ms. Smith-

Allen's medical records of treatment by Dr. Petersen without notice to or permission

from Ms. Smith-Allen or Dr. Petersen.

32.

On October 26, 2020, CEO Bromley made several phone calls to SBH Health

Health System, the medical provider referenced on the letterhead of Dr. Petersen's letter.

33.

During one of the calls to SBH Health System on October 26, 2020, CEO Bromley told an SBH Health System representative that she wanted to file a complaint against Dr. Petersen and his staff because she was unable to reach Dr. Petersen.

34.

Neither Dr. Petersen nor his staff have any record – no messages, no missed phone calls or missed pages from the operator – trying to reach him.

35.

When CEO Bromley spoke to the SBH representative on October 26, 2020, she never asked to speak to Dr. Petersen.

36.

Upon receipt of the threat from CEO Bromley that she would file a complaint against Dr. Petersen, the SBH representative immediately placed CEO Bromley's call through to another SBH Health System representative, Ms. Nayeli Salcedo-Santos.

37.

CEO Bromley did not know Ms. Salcedo-Santos.  It was the first time she had

known of, or talked to, Ms. Saledo-Santos.

38.

Rather than seeking contact with Dr. Petersen, CEO Bromley offered Ms. Salcedo-Santos Ms. Smith-Allen's name, social security number and date of birth in an attempt to access her medical records.

39.

CEO Bromley bullied Ms. Salcedo-Santos into running this information through the SBH Health System data base, soliciting from Ms. Salcedo-Santos a violation of Health Insurance Portability and Accountability Act (HIPAA) by seeking confidential medical records.

40.

Ms. Salcedo-Santos reported to CEO Bromley that she could not locate Ms. Smith-Allen in the data base she was reviewing.

41.

On October 28, 2020, CEO Bromley summoned Ms. Smith-Allen to a meeting.  CFO and Human Resources (HR) Director Carloyn Diaz was present.

42.

During the October 28, 2020 meeting, CEO Bromley stated to Ms. Smith-Allen that she wanted to talk to her about Dr. Petersen's letter requesting an accommodation on behalf of Ms. Smith-Allen.

43.

During the October 28, 2020 meeting, CEO Bromley stated repeatedly to Ms. Smith Allen that she had sought Ms. Smith-Allen's medical records from Dr. Petersen.

44.

During the October 28, 2020 meeting, CEO Bromley informed Ms. Smith-Allen that she had "Googled" Dr. Petersen and that the letter from Dr. Petersen was fraudulent.

45.

During the October 28, 2020 meeting, CEO Bromley further threatened that she was "calling the police and turning the letter over to them."

46.

During the October 28, 2020 meeting, CEO Bromley threatened Ms. Smith-Allen that she was "turning it over to legal", then loudly stated to Ms. Smith-Allen, "Do you hear me?!"

47.

During the meeting on October 28, 2020, neither CEO Bromley nor CFO and HR Director Diaz made any mention of accommodating Ms. Smith-Allen's immunocompromised medical condition.

48.

CEO Bromley and HR Director Diaz knew, or were willful in their gross, reckless and wanton negligence, that Ms. Smith-Allen did not submit a false request for an accommodation.

49.

CEO Bromley and HR director Diaz knew or were willful in their gross, reckless and wanton negligence, that neither of them nor any law enforcement officer had any authority whatsoever to have Ms. Smith-Allen investigated, arrested or prosecuted for submitting a request for accommodation, even if the request was intentionally false.

50.

Given her medical condition and the already difficult associated emotional circumstances, and fearful of the lengths to which CEO Bromley might go, including an attempt to falsely arrest and falsely imprison her, Ms. Smith-Allen was unable to further discuss with CEO Bromley and CFO and HR Director Diaz the workplace accommodation she needed to address her medical condition.

51.

The October 28, 2020 meeting between Ms. Smith-Allen with CEO Bromley and CFO and HR director Diaz was a humiliating confrontation, intended to cause and in fact did cause Ms. Smith-Allen to abandon her request for an accommodation.

52.

The October 28, 2020 meeting between Ms. Smith-Allen with CEO Bromley and CFO and HR director Diaz intended to cause and in fact did cause Ms. Smith-Allen severe emotional injury and distress.

53.

After learning of CEO Bromley's conduct toward Ms. Smith-Allen during the October 28, 2020 meeting, on October 30, 2020, Dr. Petersen emailed the doctors who own and operate Chatham Orthopaedic Associates complaining about CEO Bromley's conduct.

54.

The following week, on approximately November 4, 2020, CEO Bromley moved Ms. Smith-Allen from an office with one other co-worker to an office with recirculating air and approximately thirteen (13) other co-workers, with (5) additional staff upstairs who frequented the new office and an additional six (6) staff in another nearby office who also frequented Ms. Smith-Allen's new office.

55.

The move to a room with recirculating air, more staff, and more come-and-go traffic dramatically increased the possibility of Ms. Smith-Allen contracting the COVID-19 virus.

56.

On Monday, December 21, 2020, a Chatham Orthopaedics Associates employee also stationed in the 13-person office, notified Ms. Smith-Allen that she had tested positive for the COVID-19 virus.

57.

The anticipated and feared outcome of Chatham Orthopaedic Association's denial of Ms. Smith-Allen's request for an accommodation materialized two days later on December 23, 2020, when she tested positive for the COVID-19 virus.

58.

On December 23, 2020, Ms. Smith-Allen reported to CEO Bromley that she had tested positive for the COVID-19 virus.

59.

After suffering lost sense of smell, shortness of breath, severe fatigue and fear of death, and after eventually testing negative approximately two weeks later, Ms. Smith-Allen survived COVID-19 and returned to work on January 4, 2021.

60.

In early January 2021, the harassment began again by singling out Ms. Smith-Allen with video-monitoring of her office and disparate counseling about social distancing in the crowded, high-traffic office in which CEO Bromley had placed Ms. Smith-Allen.

61.

Again the same week, CFO and HR Director Diaz issued a false written disciplinary action against Ms. Smith-Allen.

## COUNT ONE

## DISCRIMINATION BASED ON FAILURE TO REASONABLY ACCOMMODATE MS. SMITH-ALLEN'S DISABILITY UNDER THE ADAAA

62.

At all times relevant to this action, Ms. Smith-Allen was a qualified individual with a disability within the meaning of the ADAAA.  42 U.S.C. §§ 12111(8), 12102(1).

63.

At all times relevant to this action, Ms. Smith-Allen had physical impairments that substantially limited one or more of her major life activities, including but not limited to working.  42 U.S.C. § 12102(2)(A), 29 C.F.R. § 1630.2(i), (j).

64.

At all times relevant to this action, Ms. Smith-Allen's physical impairments as described herein were known to Defendants Chatham Orthopaedic Associates and CEO Bromley.

65.

Despite her physical impairments, from the beginning of Ms. Smith-Allen's employment by Chatham Orthopaedic Associates on December 11, 2019 and at all times thereafter, Ms. Smith-Allen was able to perform all essential functions of her position as a surgical pre-certification specialist at Chatham Orthopaedic Associates with or without a reasonable accommodation.  42 U.S.C. § 12111(8).

66.

Through her physicians and in her meetings with CEO Bromley and CFO and HR director Diaz, Ms. Smith-Allen requested an accommodation for her disabilities – her migraine headaches and her immuno-compromised health condition arising out of her medically diagnosed cancer and related treatment.

67.

Through delay, unlawful medical inquiry, and intimidation causing severe emotional injury and distress, Defendant Chatham Orthopaedic Associates unlawfully denied Ms. Smith-Allen her requests for an accommodation.

68.

Defendant Chatham Orthopaedic Associates discriminated against Ms. Smith-Allen in violation of the ADAAA on the basis of her disability when it denied her the reasonable accommodations requested in October 2020.  42 U.S.C. §§ 12112(a), 12112 (b)(5)(A).

69.

As proven by Chatham Orthopaedic Associates' accommodations of other employees with immunocompromised health conditions, Chatham Orthopaedic Associates would have no significant difficulty or expense in providing Ms. Smith-Allen similar accommodations for work in October 2020.  42 U.S.C. § 12111 (10).

70.

Defendant Chatham Orthopaedic Associates violated the ADAAA intentionally, and with malice and reckless indifference to Ms. Smith-Allen's federally protected rights.   42 U.S.C. § 12112 (a), (b)(5)(A), 42 U.S.C. §§ 1981a(a)(2), 1981a(b).

71.

As a direct and proximate result of Defendant Chatham Orthopaedic Associates' failure to accommodate her disability, Ms. Smith-Allen suffered damages, including without limitation lost income and other job-related benefits, physical injury and severe emotional distress, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

72.

Defendant Chatham Orthopaedic Associates is liable to Ms. Smith-Allen for all such losses in an amount to be established at trial.  42 U.S.C. § 12117(a), 42 U.S.C. §§ 1981a(a)(2), 1981a(b).

## <u>COUNT TWO</u>

## UNLAWFUL MEDICAL INQUIRY UNDER THE ADAAA

### 73.

The prohibition against discrimination on the basis of disability in regard to the terms, conditions and privileges of employment as set forth in 42 U.S.C. § 12112(a) "shall include medical examinations and inquiries."  42 U.S.C. § 12112(d)(1).

### 74.

And an employer covered by the ADAAA "shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability[.]"  42 U.S.C. § 12112(d)(4)(A).

### 75.

CEO Bromley, for and on behalf of Chatham Orthopaedic Associates, made inquiry as to whether Ms. Smith-Allen was an individual with a disability and/or as to the nature and severity of the disability by calling Ms. Smith-Allen's oncologist and his medical office seeking her medical records – without Ms. Smith-Allen's knowledge or permission.

### 76.

An employer "shall not . . . make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the

disability, unless such . . . inquiry is shown to be job-related and consistent with business necessity.  42 U.S.C.A. § 12112(d)(4)(A).

77.

Defendant CEO Bromley's medical inquiry was not job-related and consistent with business necessity, in violation of 42 U.S.C.A. § 12112(d)(4)(A).

78.

No other employee seeking an accommodation has been subjected by Chatham Orthopaedic Associates to a medical inquiry without consent of the employee.

79.

Medical inquiries by managers of Chatham Orthopaedic Associates to an employee's medical provider regarding the employee's medical condition or history without the employee's consent are inconsistent with business practices of Chatham Orthopaedic Associates.

80.

Lawful inquiries include . . . "voluntary medical histories, which are part of an employee health program available to employees at that work site[,]" and "inquiries into the ability of an employee to perform job-related functions."  42 U.S.C. § 12112(d)(4)(B).

81.

Defendant CEO Bromley's medical inquiry, as described without limitation in paragraphs 31-40, above, was neither voluntary nor made to inquire into the ability of Ms. Smith-Allen's ability to perform job-related functions and was, therefore, in violation of 42 U.S.C. § 12112(d)(4)(B).

82.

As provided in 42 U.S.C. § 12112(d)(4)(C), "[i]nformation obtained under subparagraph (B) [of 42 U.S.C. § 12112(d)(4)] regarding the medical condition or history of any employee [is] subject to the requirements of subparagraphs (B) and (C) of [42 U.S.C. § 12112(d)(3)], in that the information obtained must be "used only in accordance with this subchapter."  42 U.S.C. § 12112(d)(3)C).

83.

Any information obtained by CEO Bromley during and from her medical inquiry was obtained involuntarily and in violation of other federal statutes and in violation of the 42 U.S.C. § 12112(d)(4)(A) and (B), and, as a matter of fact and law, the information was not and could not be "used in accordance with this subchapter." 42 U.S.C. § 12112(d)(3)C).

84.

As a direct and proximate result of Defendants' intentional discrimination as set forth in this Count Two, Ms. Smith-Allen has suffered and will continue to suffer

severe emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

85.

Defendant Chatham Orthopaedic Associates is liable to Ms. Smith-Allen for all such losses in an amount to be established at trial.  42 U.S.C. § 12117(a), 42 U.S.C. §§ 1981a(2), 1981a(b).

## COUNT THREE

### RETALIATION BECAUSE OF
### PROTECTED ACTIVITY UNDER THE ADAAA

86.

"No *person* shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a) (emphasis supplied).

87.

Ignoring concerns related to Ms. Smith-Allen's migraine headaches, and failing to respond to her oncologist's request for accommodation, CEO Bromley moved forward and failed to reconsider her plans to relocate Ms. Smith-Allen to an

office immediately adjacent to a loud and vibrating MRI machine, knowing the harm such placement would cause a person with Ms. Smith's medical condition.

88.

Immediately after the request for accommodations for Ms. Smith-Allen's immunocompromised medical condition related to her cancer and cancer treatment, CEO Bromley unleashed an additional strategy of harassing, humiliating and intentionally harming Ms. Smith-Allen, accusing her of fraud and criminal conduct in seeking the accommodations, and threatening to have her arrested and prosecuted.

89.

Immediately after Ms. Smith-Allen's expression of opposition to CEO Bromley's unlawful medical inquiry, after confirming the authenticity of her oncologist's letter requesting specific accommodations, CEO Bromley continued forward with her plan to move Ms. Smith-Allen to the crowded, high-traffic office with recirculated air.

90.

CEO Bromley conjoined this humiliating harassment with unlawful disclosure of Ms. Smith-Allen's confidential information, invasion of her private medical records and violation of her rights under Health Insurance Portability and Accountability Act (HIPAA).

91.

Less than a month after Ms. Smith-Allen filed a Charge of Discrimination with the EEOC and less than two-weeks after Ms. Smith-Allen returned from leave caused by the COVID-19 virus, Chatham Orthopaedic Associates, through CEO Bromley and others, further retaliated against Ms. Smith-Allen by drumming up disparate counseling over alleged failure to social distance in her crowded, high-traffic office with the intention of impugning Ms. Smith-Allen's request for an accommodation.

92.

Less than a month after Ms. Smith-Allen filed a Charge of Discrimination with the EEOC and less than two-weeks after Ms. Smith-Allen returned from leave caused by the COVID-19 virus, Chatham Orthopaedic Associates, through CEO Bromley and others, further retaliated against Ms. Smith-Allen by drumming up a written warning falsely alleging performance failures.

93.

Defendants Chatham Orthopaedic Associates and CEO Bromley violated the ADAAA by retaliating against Ms. Smith-Allen because she requested accommodations for disabilities arising from her medical conditions known to Defendants, to wit, her migraine headaches and cancer.  42 U.S.C. § 12203(a).

94.

Defendants Chatham Orthopaedic Associates and CEO Bromley violated the ADAAA by retaliating against Ms. Smith-Allen because she opposed CEO Bromley's unlawful medical inquiry.  42 U.S.C. § 12203(a).

95.

Defendants Chatham Orthopaedic Associates and CEO Bromley violated the ADAAA by retaliating against Ms. Smith-Allen because she participated in an EEOC proceeding by filing a Charge of Discrimination whereupon immediately thereafter, CEO Bromley conducted video-monitoring of her office followed by false allegations of failure to social distance in the crowded, high-traffic office in which CEO Bromley had placed her and knowingly issuing a false written disciplinary warning against her.  42 U.S.C. § 12203(a).

96.

Defendant Chatham Orthopaedic Associates may be held liable for violating the retaliation prohibition of ADAAA, to wit, 42 U.S.C. § 12203(a).

97.

Defendant CEO Bromley may be held liable in her individual capacity for violating the retaliation prohibition of the ADAAA.  28 C.F.R. § 35.134.[1]  See also,

---

[1] The Department of Justice (DOJ) has interpreted 42 U.S.C. § 12203 to provide for individual liability, as follows:

*Shotz v. City of Plantation, Fla*., 344 F.3d 1161, 1180 (11th Cir. 2003) (individual may be sued privately in his or her personal capacity for violating § 12203 in the public services context).

98.

Defendants Chatham Orthopaedic Associates and Defendant CEO Bromley are liable for the retaliatory conduct of CEO Bromley and others, and are jointly and severally responsible for damages incurred by Ms. Smith-Allen arising out of that retaliatory conduct.

99.

As a direct and proximate result of Defendants' intentional violation of 42 U.S.C. § 12203(a), Ms. Smith-Allen suffered damages, including without limitation, physical and severe emotional injury and distress, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be proved at trial.  42 U.S.C. § 12117(a), 42 U.S.C. §§ 1981a(a)(2), 1981a(b).

---

(a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.

(b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

28 C.F.R. § 35.134.  The DOJ defines a "private entity" as "a *person* or entity other than a public entity." 28 C.F.R. § 36.104 (emphasis supplied).

## COUNT FOUR

**COERCION, INTIMIDATION, THREATS AND INTERFERENCE
IN THE EXERCISE AND ENJOYMENT OF, AND ON ACCOUNT OF,
HAVING EXERCISED OR ENJOYED RIGHTS GRANTED
AND PROTECTED BY THE ADAAA**

100.

"It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."  42 U.S.C. § 12203(b).

101.

Ms. Smith-Allen had a right under the ADAAA to reasonable accommodations in the circumstances of her disabilities, to wit, migraine headaches and cancer.

102.

In exercising and enjoying the right of requesting the reasonable accommodation related to her migraine headaches, Ms. Smith-Allen was harassed and intentionally harmed by Defendants CEO Bromley and Chatham Orthopaedic Associates by moving her office and placing her immediately adjacent to a loud and vibrating MRI machine, knowing the harm such placement would cause a person with that medical condition.

103.

In exercising and enjoying the right of requesting the reasonable accommodations related to her immunocompromised medical condition arising from her cancer and cancer treatment, Defendants CEO Bromley and Chatham Orthopaedic Associates unlawfully invaded her private medical records and made an unlawful medical inquiry, violating Ms. Smith's rights under Health Insurance Portability and Accountability Act (HIPAA).  Defendants followed this unlawful conduct by harassing, humiliating and intentionally harming Ms. Smith-Allen by, among other conduct, accusing her of fraud and criminal conduct in seeking the accommodation, and threatening to have her arrested and prosecuted.

104.

In exercising and enjoying the right of requesting the reasonable accommodations related to her immunocompromised medical condition arising from her cancer and cancer treatment and related further to her participation in an EEOC proceeding to vindicate those rights, Defendants CEO Bromley and Chatham Orthopaedic Associates further engaged in disparate video monitoring and counseling, and a written warning based on allegations known to be false, as described herein above.

105.

Defendant Chatham Orthopaedic Associates intentionally coerced, intimidat-

ed, threatened and interfered with Ms. Smith-Allen in her exercise and enjoyment of, and on account of her having exercised and enjoyed, her right to request an accommodation, her right to oppose unlawful medical inquiry, and her right to participate in an EEOC proceeding under, and as required by, the ADAAA.  42 U.S.C. § 12203(b).

106.

Defendant Chatham Orthopaedic Associates may be held liable for violating the coercion prohibition of ADAAA, to wit, 42 U.S.C. § 12203(b).

107.

Defendant CEO Bromley intentionally coerced intimidated, threatened and interfered with Ms. Smith-Allen in her exercise and enjoyment of, and on account of her having exercised and enjoyed, her right to request an accommodation, her right to oppose unlawful medical inquiry, and her right to participate in an EEOC proceeding under, and as required by, the ADAAA.  42 U.S.C. § 12203(b).

108.

Defendant CEO Bromley may be held liable for violating the coercion prohibition of ADAAA.  See paragraph 95, above.

109.

As a direct and proximate result of Defendants' intentional violation of 42 U.S.C. § 12203(b), Ms. Smith-Allen suffered damages, including without limitation,

physical and emotional distress, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial. 42 U.S.C. § 12117(a), 42 U.S.C. §§ 1981(a)(2), 1981a(b).

<u>COUNT FIVE</u>
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESSS**

110.

Ms. Smith-Allen suffered financial losses and severe emotional distress as a result of the intentional, reckless and wanton conduct of Defendants CEO Bromley and Chatham Orthopaedic Associates. Their actions and failures to act related to CEO Bromley's harassing, humiliating and intentional conduct resulted in harm to Ms. Smith-Allen.

111.

CEO Bromley's accusations of fraud and criminal conduct, and threatening to have Ms. Smith-Allen arrested and prosecuted for requesting an accommodation for her cancer is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of human decency. Such conduct is atrocious and utterly intolerable in a civilized community and no reasonable person could be expected to endure it.

112.

Similarly, CEO Bromley's intentional and knowing placement of Ms. Smith-

Allen in an office adjacent to a loud and vibrating MRI machine immediately after learning of her migraine headaches and her placement of Ms. Smith-Allen in a crowded, high-traffic, office with recirculating air immediately after Ms. Smith-Allen, through her oncologist, requested an accommodation for precisely the opposite working environment is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of human decency.  Such conduct on behalf of CEO Bromley, alone and combined with the knowing failure to act to prevent such conduct by Chatham Orthopaedic Associates, is atrocious and utterly intolerable in a civilized community and no reasonable person could be expected to endure it.

113.

The humiliation, embarrassment and related injuries, both physical and emotional, suffered by Ms. Smith-Allen are a direct, legal and proximate result of these Defendants' extreme and outrageous conduct.

114.

The actions of Defendants CEO Bromley and Chatham Orthopaedic Associates were taken in furtherance of their conscious, intentional, and deliberate plan and purpose and Defendants are jointly and severally liable for this conduct in an amount to be proved at trial.

## COUNT SIX
## NEGLIGENT AND WRONGFUL HIRING, RETENTION, AND SUPERVISION

### 115.

Defendant Chatham Orthopaedic Associates had a duty, owed to Ms. Smith-Allen, to prevent and correct unlawful workplace conduct of the nature described in this Complaint.

### 116.

Chatham Orthopaedic Associates had a duty to know, should have known, and did actually know that the individual for whom liability is sought under certain Counts of this Complaint, to wit, Defendant CEO Bromley, had an employment history and reputation for such workplace conduct and was not suitable for her particular employment with Defendant.

### 117.

It was foreseeable to Chatham Orthopaedic Associates that CEO Bromley would engage in the described conduct against Ms. Smith-Allen, and Chatham Orthopaedic Associates had a duty not to continue CEO Bromley's employment or to take other means which were reasonably calculated to ensure that such conduct would not occur.

### 118.

Chatham Orthopaedic Associates hired and continued the employment of

CEO Bromley, violating its duty to Ms. Smith-Allen.

119.

At all relevant times, CEO Bromley was subject to the direction and control of Chatham Orthopaedic Associates.

112.

Chatham Orthopaedic Associates owed Ms. Smith-Allen a duty to exercise due skill, care and judgment not to employ in positions of authority those who had an employment history and reputation for workplace conduct of the nature described in this Complaint.

121.

Chatham Orthopaedic Associates was negligent in that it failed to exercise that degree of care followed by ordinary and prudent employers, corporations, and/or supervisors in providing management and supervision free from such workplace conduct under the same or similar circumstances.

122.

Chatham Orthopaedic Associates failed to adequately supervise its managers and supervisors to make sure they were fulfilling their legal obligations not to subject their subordinates to workplace conduct of the nature described in this Complaint, including Ms. Smith-Allen.

123.

Chatham Orthopaedic Associates failed to properly train its managers and supervisors concerning their legal obligations not to engage in such conduct toward their subordinates.   Indeed, Carolyn Diaz, Chatham Orthopaedic's CFO and ostensible "Human Resources Director" has little, if any, training as a human resources professional.

124.

The negligent actions and inactions of Chatham Orthopaedic Associates caused Ms. Smith-Allen significant financial loss, physical injury, emotional distress, humiliation, embarrassment and other damages.

125.

As a direct, legal and proximate result of said Defendant Chatham Orthopaedic Associates' negligence and the violations of the duty it owed to Ms. Smith-Allen, Ms. Smith-Allen was and remains damaged in an amount to be proved at trial.   Chatham Orthopaedic Associates is liable for those damages.

## COUNT SEVEN
## EXPENSES OF LITIGATION

126.

The misfeasance and wrongful conduct of Defendants CEO Bromley and Chatham Orthopaedic Associates evidences bad faith, vexatiousness, and stubborn

litigiousness and was carried out with such conscious and reckless disregard of the rights of Ms. Smith-Allen' rights that such conduct on the part of Defendants entitles Ms. Smith-Allen to recover her reasonable costs and expenses, including, but not limited to, attorneys' fees, incurred in connection with this action.

127.

Ms. Smith-Allen is entitled to recover from Defendants all costs of the prosecution of this matter, including reasonable attorney's fees, under O.C.G.A. § 13-6-11 and other applicable law.

## COUNT SEVEN
## PUNITIVE DAMAGES

128.

The actions of Defendants CEO Bromley and Chatham Orthopaedic Associates demonstrate willful misconduct, malice, wantonness, oppression, and an entire want of care to a degree that raises the presumption of conscious indifference to consequences and justifies an award of punitive damages.

129.

The actions of Defendants CEO Bromley and Chatham Orthopaedic Associates demonstrate a willful and wanton intent to cause harm, and did in fact cause substantial harm to Ms. Smith-Allen.

130.

In retaliating against Ms. Smith-Allen in violation of 42 U.S.C. § 12203(a), and in coercing, intimidating, threatening and interfering with Ms. Smith-Allen in her exercise and enjoyment of her rights under the ADAAA, Defendants CEO Bromley and Chatham Orthopaedic Associates "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C.A. § 1981a(b)(1).

131.

As a result of the foregoing, and pursuant to O.C.G.A. § 51-12-5.1, 42 U.S.C.A. § 1981a(b)(1), and other applicable law, Ms. Smith-Allen is entitled to recover from Defendants' CEO Bromley and Chatham Orthopaedic Associates punitive damages in an amount to be determined at trial for the purpose of punishing these individual Defendants and deterring the repetition of such conduct.

## COUNT EIGHT
### RATIFICATION

132.

With respect to all Counts of this Complaint, Chatham Orthopaedic Associates ratified the conduct of its management employee, CEO Bromley, due to knowledge by the Chatham Orthopaedic Associates of CEO Bromley's unlawful intentional, reckless, wanton and negligent conduct as set forth herein or to be further

proved at trial, and its subsequent actions or inaction, including the failure to take measures necessary to remedy the employee conduct.

133.

As a direct, legal and proximate result of the stated conduct and ratification thereof, Ms. Smith-Allen suffered financial losses, humiliation, embarrassment, physical injury, severe emotional injury and distress, related injuries and other damages to be proved at trial.

134.

Chatham Orthopaedic Associates is liable for Ms. Smith-Allen's injuries arising out of Chatham Orthopaedic Associates' ratification of CEO Bromley's conduct in an amount to be proved at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays:

a)  For her claims to be tried before a jury;

b)  For Judgment to be entered against Defendants for their violations of Ms. Smith-Allen's rights under state and federal law and under his contract of employment;

c)  For Judgment requiring Defendants to make Ms. Smith-Allen whole by reimbursing her for out-of-pocket losses as well as lost wages in an amount equal to the sum of any wages, salary, employment benefits or

other compensation or benefits denied or lost as a result of their violation of Ms. Smith-Allen's rights under state and federal law, together with interest thereon;

d)    For Judgment requiring Defendants to compensate Ms. Smith-Allen for her mental and emotional injury and distress suffered as a result of their violation of her rights under state and federal law;

e)    For Judgment awarding Ms. Smith-Allen punitive damages against each Defendant as appropriate in an amount determined by a jury;

f)    For an Order granting Ms. Smith-Allen a reasonable attorney's fee and reimbursement for reasonable expert witness fees together with any and all other costs associated with this action, as provided by law;

g)    That Ms. Smith-Allen be awarded prejudgment and post-judgment interest;

h)    For a permanent injunction enjoining Defendants and their successors, deputies, agents, employees, attorneys, and those acting in concert with them, from engaging in any employment practice or policy which interferes with, or fails to fulfill, their obligations under federal and state law;

i)      For an order requiring Defendants and their managerial employees to complete training regarding their employees' rights under federal law; and

j)      For such further relief as necessary to fulfill the purposes of the federal and state laws under which Ms. Smith-Allen brings his claims, or as the Court otherwise deems just and proper.

RESPECTFULLY SUBMITTED, this 7th day of June, 2020.


                                                    */s/ S. Wesley Woolf*_____
                                                    S. WESLEY WOOLF
                                                    Georgia Bar No. 776175
                                                    *Attorney for Plaintiff*

WOOLF LAW FIRM
408 East Bay Street
Savannah, Georgia 31401
T:  (912) 201-3696
F:  (912) 236-1884
woolf@woolflawfirm.net